No. 39,382

FORREST K. LELAND, *Plaintiff*, v. THE KANSAS STATE BOARD OF CHIROPRACTIC EXAMINERS, *Defendants*.

(270 P. 2d 255)

Opinion filed May 8, 1954.

*Fred Hinkle,* of Wichita, argued the cause for the plaintiff.

*Robert E. Hoffman,* assistant attorney general, argued the cause, and *Harold R. Fatzer,* attorney general, was with him on the brief for the defendants.

The opinion of the court was delivered by

THIELE, J.: This is an original proceeding in mandamus to compel the State Board of Chiropractic Examiners to reinstate a license previously issued to the plaintiff and arising out of the following undisputed facts.

On October 14, 1950, the above Board issued to plaintiff a license to practice chiropractic and thereafter he established an office in the city of Protection, in Comanche county. In November, 1951, a complaint was made to the Board that on or about August 1, 1951, the

plaintiff had been guilty of acts constituting a crime involving moral turpitude, and on December 1, 1951, at the direction of the chairman of the Board notice was given plaintiff that he might appear in person or by counsel at the regular January, 1952, meeting of the Board in Topeka and show cause why his license should not be revoked. On January 1, 1952, plaintiff appeared at the meeting of the Board and heard the charges as they were embodied in a letter from the county attorney of Comanche county. He denied the charges and the Board then adopted a motion that the investigation be continued and a committee be appointed to act for the Board. No date for a further hearing was fixed at that time. Later and on January 10, 1952, the Board held a special meeting at Coldwater for the purpose of continuing the investigation. Plaintiff was not present at this meeting. The record does not disclose he had any notice of this meeting. At this meeting a stenographic record was made of the persons interviewed or examined. This record discloses affirmatively that no person interviewed or examined was under oath. At the close of this hearing the Board went to Ashland to interview a witness, but no stenographic record was made. Later the Board adopted a motion that since all the evidence was in and there appeared to be no doubt, the Board find plaintiff guilty as charged, and another motion that plaintiff's license be revoked for violation of G. S. 1949, 65-1305. On September 30, 1953, plaintiff filed a petition with the Board for reinstatement of his license and was informed by the Board that it would not further review the case nor reinstate plaintiff's license. In his motion for the writ plaintiff directs attention to the fact the statute above noted contains no provision for review of or appeal from the ruling of the Board. The Board's answer contains an admission that the revocation of plaintiff's license was made on the ground set out in G. S. 1949, 65-1305 and that no conviction was ever had against the plaintiff of a crime involving moral turpitude, but that the members of the Board in good faith believed him to be guilty. The Board also alleges that from January 10, 1952, (date of revocation of license) to September 30, 1953, (date of asking reinstatement of license) plaintiff acquiesced in the Board's action and is now estopped to deny validity of its action, is guilty of laches and comes into court with unclean hands requesting relief in equity.

In reaching a decision we do not find it necessary to discuss in detail each and every contention made by the parties to this proceeding.

Concededly the action of the Board in attempting revocation of the license issued to plaintiff was under G. S. 1949, 65-1305, which for present purposes reads:

"The state board of chiropractic examiners may . . . revoke a license to practice chiropractic . . . upon any of the following grounds, to wit: . . . . the conviction of a crime involving moral turpitude . . . Any person who is a licentiate . . . against whom any of the foregoing grounds for revoking . . . a license is presented to said board with a view of having the board revoke . . . a license, shall be furnished with a copy of the complaint, and shall have a hearing before said board in person or by attorney, and witnesses may be examined by said board respecting the guilt or innocence of said accused."

There is no contention but that plaintiff was granted a license to practice chiropractic and the principal, if not the sole question, is whether that license was lawfully revoked. We have heretofore noted that the plaintiff had notice of the stated meeting in Topeka held January 1, 1952, and that he appeared there and that no date was fixed for the meeting later held at Coldwater at which he was not present. During the oral argument the Board's counsel frankly stated he did not believe that plaintiff had any notice of the second meeting. If that be true, plaintiff was deprived of any opportunity to cross-examine witnesses presented by the Board, to produce witnesses on his own behalf or to make his defense. We shall not, however, rest our decision solely on that invasion of his rights.

Neither party to this action directs any attention to the statute creating the Board and defining its powers, but we note that it is provided in G. S. 1949, 74-1303, that:

"Said board shall have authority to administer oaths, take affidavits, summon witnesses and take testimony as to matters pertaining to their duties."

Just why this statute was not observed does not appear; that it was not observed is clear for the exhibit attached to the Board's answer affirmatively discloses that no witness at the Coldwater hearing was sworn.

Whether we consider the phrase "conviction of a crime" from the standpoint of approved usage, or as technical words having a peculiar and appropriate meaning in law (G. S. 1949, 77-201, *second*) we can come to no conclusion other than that the phrase means, at least, either a plea of guilty or a verdict to that effect which is the result of a trial in a competent court. We need not here treat cases holding that "conviction" contemplates not only a plea or finding of guilty by verdict, but a judgment thereon. As bearing

on the question see *Hogg v. Whitham*, 120 Kan. 341, 242 Pac. 1021; *Oberst v. Mooney*, 135 Kan. 433, 438, 10 P. 2d 846; *Noller v. Aetna Life Ins. Co.*, 142 Kan. 35, 46 P. 2d 22; 18 C. J. S. 98; 14 Am. Jur. 759. We have no doubt that as used in G. S. 1949, 65-1305, the phrase "conviction of a crime" means a conviction had as the result of a trial in a criminal action prosecuted by the state. The Board's answer admits there was no such conviction.

Viewed in its entirety the record discloses that at a hearing of which the plaintiff had no notice, unsworn testimony was received by the Board and on the evidence so received the Board sat in judgment and convicted the plaintiff of a crime involving moral turpitude and on the basis of that conviction then ordered a revocation of plaintiff's license to practice chiropractic. In its brief the Board does not contend that plaintiff had notice, receipt of unsworn testimony is not mentioned, and no contention is made that the Board had any power to "convict" the plaintiff. The Board seeks to avoid the infirmities noted by contending that plaintiff acquiesced in its judgment.

The gist of the Board's contention that the plaintiff should not prevail is that issuance of the writ of mandamus rests in the sound discretion of the court (citing *The State, ex rel., v. Thomas County*, 116 Kan. 285, 226 Pac. 745) and that technical compliance with the law will not be required where such compliance would require a violation of the spirit of the law (*The State, ex rel., v. Comm'rs of Phillips County*, 26 Kan. 419), and that the statute under which it acted is only one of a series of similar acts pertaining to the healing arts, all designed to protect the public against unqualified persons attempting to engage in such arts, and that the Board is authorized to revoke a license of any licensee where it finds him to be guilty of acts involving moral turpitude. That the issuance of the writ is discretionary nor that it will not issue where compliance would require a violation of the spirit of the law need not be debated, but where the statute, as in the instant case, points out clearly the ground of revocation and the manner in which it may be exercised, it may not be said that the Board has other and further powers. Under G. S. 1949, 74-1303 the Board has power to "adopt such rules and regulations as they deem proper and necessary for the performance of their duties," and assuming that under such power they could have made rules and regulations applicable to the situation involved, no such rules or regulations, if any were made, are included in the

record. We need not consider whether such a rule could have effect beyond the specific requirement of G. S. 1949, 65-1305. The Board further contends that the plaintiff acquiesced in its judgment, and authorities are cited that acquiescence waives the right to appeal or further contest. Without review it may be said the situations considered in those cases were acquiescence in judgments which it was contended were erroneous. The judgment now under consideration was in effect no judgment at all, for the plaintiff had no notice of the hearing and under the undisputed facts, the Board had no power or jurisdiction to find plaintiff guilty of a crime. The Board's contention that plaintiff is guilty of laches swings around its contention its revocation of plaintiff's license was merely irregular, a contention we cannot sustain. If any analogy may be drawn, it is that assuming plaintiff's license was properly revoked, under G. S. 1949, 65-1305 he had a period of two years thereafter to apply to the Board to have his license restored to him. While it would have been possible for the plaintiff to have commenced a proceeding at an earlier date, we are not persuaded that plaintiff has waited too long. And finally the Board contends that plaintiff should have brought an action to enjoin revocation of his license; that injunction was an adequate remedy and that in such circumstances the writ of mandamus must be denied. In support the only case cited is *Simpson v. Kansas City*, 52 Kan. 88, 34 Pac. 406. A reading of that case shows that validity of paving assessments was involved; that the time in which the assessment could have been attacked by injunction proceedings had expired, and that relief could not later be obtained by mandamus. That case is not decisive. As has been pointed out, the plaintiff was not given notice of the hearing, and the findings of the Board convicting plaintiff of a crime involving moral turpitude and the revoking of plaintiff's license were beyond its power. We are not persuaded that plaintiff was under any duty to seek injunction against a void order, and is not entitled to maintain the instant action.

Whether plaintiff was guilty of any crime involving moral turpitude was a question to be determined by a jury in a criminal action brought by the state, and no such action was ever filed. Disregarding failure to give plaintiff notice the result is that his license was revoked unlawfully. The judgment of this court is that it be restored to him by action of the defendant Board, and it is so ordered.

HARVEY, C. J., dissents.